UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

SCOTT STEWART,

               Plaintiff,

                                                 Case No. 20-cv-0320-bhl

   v.

KILOLO KIJAKAZI,[1] Acting Commissioner
of Social Security Administration,

               Defendant.

---

## DECISION AND ORDER

---

      Scott Stewart seeks review of a December 17, 2019 administrative law judge decision denying his claim for disability benefits under the Social Security Act. For the reasons set forth below, the decision is reversed and the case remanded for further proceedings consistent with this decision.

### PROCEDURAL BACKGROUND

      The Court considered Scott Stewart's first appeal in this case almost exactly five years ago when it reversed and remanded a 2015 administrative law judge (ALJ) decision denying Social Security disability benefits. (ECF No. 10-8 at 47-78.) Since then, Stewart has participated in two remand hearings. (ECF NO. 12 at 2.) The first resulted in an unfavorable decision on June 22, 2018, and the second resulted in a partially favorable decision dated December 17, 2019. (*Id.*) Stewart now challenges the second decision in which the ALJ first determined that Stewart had become disabled on November 22, 2018, only to then find him ineligible for benefits anyway because his Social Security disability program insurance expired on December 31, 2017. (*Id.*)

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Therefore, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for former Commissioner Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. §405(g).

## FACTUAL BACKGROUND

On April 8, 2012, in the course of his work as a cable television technician for Time Warner Cable Services, Scott Stewart fell down a set of stairs and injured his low back. (*Id.* at 3.) An MRI of his lumbar spine revealed L4-L5 disc disease with diffuse disc bulge and a more focal posterior central protrusion that had an underlying annular tear. (*Id.*) Further examination also showed flattening of the thecal sac, central canal stenosis, and bilateral foraminal encroachment. (*Id.*) To relieve his pain, Stewart tried everything from epidural injections (*id.*), to decompression surgery (*id.*), to physical therapy (*id.* at 4), to bilateral L5-S1 facet injections (*id.* at 6), to radio frequency ablation (*id.* at 9), to opioids. (*Id.* at 7.) Despite these efforts, Stewart testified that he is still incapable of sitting or standing for prolonged periods of time and must shift positions and walk around to relax his back. (*Id.* at 21.)

## LEGAL STANDARD

The Commissioner's final decision on the denial of benefits will be upheld "if the ALJ applied the correct legal standards and supported his decision with substantial evidence." *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011) (citing 42 U.S.C. §405(g)). Substantial evidence is not conclusive evidence; it is merely "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted). The Supreme Court has instructed that "the threshold for such evidentiary sufficiency is not high." *Id.* In rendering a decision, the ALJ "must build a logical bridge from the evidence to his conclusion, but he need not provide a complete written evaluation of every piece of testimony and evidence." *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013) (citations omitted). That said, "ALJs must rely on expert opinions instead of determining the significance of particular medical findings themselves." *Lambert v. Berryhill*, 896 F.3d 768, 774 (7th Cir. 2018) (citations omitted). They "may not rely on a hunch." *Blakes ex rel. Wolfe v. Barnhart*, 331 F.3d 565, 570 (7th Cir. 2003) (citations omitted).

In reviewing the entire record, this Court "does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility." *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Judicial review is limited to the rationales offered by the ALJ. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93-95 (1943)).

# ANALYSIS

Stewart identifies a flurry of alleged defects in the ALJ's decision. (*See generally* ECF No. 12.) At bottom, though, his argument is that the record does not substantially support the ALJ's residual functional capacity (RFC) analysis. Because the Court agrees that the ALJ's analysis is lacking, it will again reverse and remand this case for further proceedings.

## I. The ALJ's RFC Determination Lacks Substantial Support.

A claimant's residual functional capacity or RFC is "an assessment of what work-related activities the claimant can perform despite [his] limitations." *Young v. Barnhart*, 362 F.3d 995, 1000-01 (7th Cir. 2004) (citations omitted). "In determining an individual's RFC, the ALJ must evaluate all limitations that arise from medically determinable impairments, even those that are not severe, and may not dismiss a line of evidence contrary to the ruling." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009) (citations omitted). An ALJ's RFC analysis must "rely on expert opinions" in the record, *Lambert*, 896 F.3d at 774, and the ALJ himself may not "play[] doctor." *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014) (citations omitted).

In this case, the ALJ described Stewart's RFC in the following manner:

> After careful consideration of the entire record, the undersigned finds that since April 8, 2012, the claimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a) except that he is unable to climb ladders, ropes and scaffolds; he can occasionally stoop, crouch, kneel, crawl and climb ramps and stairs; and he must be allowed to change position between sitting and standing at will.

(ECF No. 10-7 at 83.) Stewart challenges the final clause: "he must be allowed to change position between sitting and standing at will." He argues that this limitation finds no support in the record. To the contrary, Stewart insists the record confirms he needed the freedom to sit, stand, *and walk around* at will.

The distinction between the ALJ's explanation and the evidentiary record is important because the ALJ's RFC limitations informed what jobs the vocational expert (VE) determined Stewart could work. (ECF No. 12 at 22.) The ALJ asked the VE to identify jobs in the national economy available to someone of Stewart's age, education, work experience, and RFC. (ECF No. 10-7 at 91-92.) The VE responded with a list of over 150,000 jobs. (*Id.* at 92.) Based on the preponderance of jobs available, the ALJ determined that, prior to November 22, 2018, Stewart was not disabled. (*Id.*) But if the RFC was less restrictive than necessary, then the VE's list of

jobs may have been overinclusive. This case, therefore, turns on whether there is substantial support in the record for the ALJ's RFC determination.

An ALJ is required to build "a 'logical bridge' between the evidence and his conclusions." *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010) (citations omitted). The concept of a "logical bridge" implies that the conclusion (or destination) is not necessarily known ahead of time; it is revealed as the evidence accrues. An ALJ thus cannot work backwards, building a bridge from a pre-conceived conclusion and then tying it to the evidence.

Here, the ALJ's "logical bridge" stands on inadequate supports. Stewart's neurosurgeon, Dr. Shekhar Dagam, and his physical therapist, Kurt Alt, both opined that Stewart "need[ed] a job that permits shifting positions at will from sitting standing, or walking" and that he also "needed to include periods of walking around during an 8-hour working day." (ECF No. 10-5 at 35, 52.) The physical therapist who performed Stewart's functional capacity analysis, Paul Potos, concluded that his work day tolerance was 3-4 hours. (*Id.* at 43-50.) With respect to all three, the ALJ wrote: "To the extent that [the expert's] opinion supports a residual functional capacity for the range of sedentary work described above, the undersigned gives it substantial weight." (ECF No. 10-7 at 87, 88, 89.) In other words, the ALJ gave these three expert opinions weight, indeed substantial weight, but only to the extent that they agreed with his already-arrived-at conclusion that Stewart's "symptoms are best accommodated by the . . . ability to alternate his position at will." (*Id.* at 87.) An ALJ, of course, has a "duty to resolve" conflicts of medical evidence. *Richardson v. Perales*, 402 U.S. 389, 399 (1971). And "[w]hen treating and consulting physicians present conflicting evidence, the ALJ may decide whom to believe, so long as substantial evidence supports that decision." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001) (citation omitted). But he is not free to propose his own compromise position that no expert on record propounds; such an act amounts to the ALJ making himself an expert. *See Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) (remanding where the ALJ "independently evaluated the evidence . . . and improperly substituted his judgment for that of [the doctor]"). Put another way, if the only conflict is between the experts and the ALJ himself, no true conflict exists. Here, the ALJ rejected the opinions of Dr. Dagam, as well as Alt and Pothos, in favor of his own. That was improper.

But, Defendant protests, not all of Stewart's doctors concluded that he needed a job that provided the freedom to sit, stand, and walk at will. (ECF No. 19 at 14-15.) This is true. For instance, Dr. Richard Lemon, an orthopedic surgeon who performed an independent medical

evaluation of Stewart in January of 2014, concluded that "Mr. Stewart has no work restrictions related to his on-the-job low back injury of April 8, 2012" but "should have a permanent 50-pound lifting restriction due to his non-work-related low back fusion surgery of September 20, 2012." (ECF No. 10-7 at 6.) And state medical consultants Dr. Pat Chan and Dr. Janis Byrd, who evaluated Stewart in 2012 and 2013 respectively, both concluded that Stewart could perform light, as opposed to sedentary, work. (ECF No. 10-1 at 143, 176-77.) As an initial matter, the ALJ gave the opinions of Dr. Chan and Dr. Byrd "little weight," (ECF No. 10-7 at 86), and he did not even mention Dr. Lemon. It would certainly raise an eyebrow if the ALJ had sided with two discounted medical consultants and an unmentioned doctor over Stewart's treating physician. *See Wieland v. Saul*, No. 19-CV-1066-SCD, 2020 WL 2061444, at *6 (E.D. Wis. Apr. 29, 2020) (holding that the ALJ must give good reasons "to support the weight he ultimately assigns to the treating physician's opinion"). That, however, is not what happened here. The ALJ did not side with doctors Chan, Byrd, and/or Lemon. None of them concluded that Stewart's symptoms were "best accommodated by the reduced exertional level to sedentary work activity with postural work restrictions and the ability to alternate his position at will." (ECF No. 10-7 at 87.) In fact, none of them concluded he was limited to "sedentary" work at all. It is true that these opinions represent the least restrictive end of a spectrum that the ALJ chose to situate himself in the middle of. But the ALJ does not have license to split the baby. He is not a mediator for rival experts; he is a man at a fork in the road. Therefore, the Court cannot affirm his decision simply because he settled somewhere between two extremes.

      Defendant also argues that the opinion of Dr. John Brusky, Stewart's pain management doctor, substantially supports the ALJ's decision. (ECF No. 19 at 8-10.) The ALJ gave "significant weight to Dr. Bruskey's [sic] opinion." (ECF No. 10-7 at 88.) Dr. Brusky noted that Stewart's back pain was "superficial" and unable to "be objectively measured." (ECF No. 10-5 at 39.) He also stated that Stewart's "pain appears out of proportion to physical findings." (*Id.* at 42.) And he "recommend[ed] [Stewart] explore [vocational rehabilitation] and not permanent disability." (*Id.*) But when it came to evaluating Stewart's functional capacity, Dr. Brusky admitted: "I don't know pt well enough to answer. He would need Functional Capacity Eval. to answer these questions accurately." (*Id.* at 40.) In essence, Dr. Brusky's opinion supports the ALJ's conclusion that Stewart has exaggerated the amount of pain he experiences. But "[a] distinction exists . . . between the amount of . . . pain an individual experiences, which . . . is

entirely subjective, and how much an individual's degree of pain . . . limits his functional capabilities, which can be objectively measured." *Williams v. Aetna Life Ins. Co.*, 509 F.3d 317, 322 (7th Cir. 2007). Dr. Brusky conceded that he had no opinion on how much Stewart's pain limited his functional capabilities. Therefore, the ALJ cannot rely on Dr. Brusky's opinion to support the conclusion that Stewart's "back pain . . . symptoms are best accommodated by . . . the ability to alternate his position at will." (ECF No. 10-7 at 87.)

Finally, Defendant argues that the ALJ's decision is consistent with Stewart's assessment of his own functional capacity. (ECF No. 19 at 4-5.) The ALJ made this point twice, stating that his RFC finding was "consistent with the claimant's own estimate of his functional ability as well as his daily activities." (ECF No. 10-7 at 87, 88.) According to the ALJ, "[t]he claimant . . . acknowledged in July 2016 that he could do sedentary work if he had the ability to alter his position as needed for comfort." (*Id.* at 87-88.) But what Stewart actually said was that "he could do 'sedentary work' such as using a computer, but would need to determine if he could stand *and walk* before returning to a seated position." (ECF No. 10-12 at 5-6) (emphasis added). Thus, it once again appears that the ALJ excised a proposed limitation in order to tip the scales in favor of his own conclusion. Defendant responds that, perhaps the ALJ discounted part of Stewart's self-assessment because he found that Stewart's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are *not fully supported*." (ECF No. 10-7 at 84) (emphasis added). The problem with this theory is that an ALJ is not free to disregard a claimant's proposed limitations simply because they are "not fully supported." Rather, a claimant's "symptoms, including pain, will be determined to diminish [his] capacity for basic work activities to the extent that [the] alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. §404.1529(c)(4). In requiring that Stewart's proposed limitations be fully supported, the ALJ may have impermissibly excluded some limitations (such as the need to walk around) that were merely "consistent with the objective medical evidence," but not totally unimpeachable. This, too, would be error.

Bereft of testimony, expert or otherwise, that supports his RFC determination, the ALJ's conclusion rests solely on the objective medical evidence. But objective medical evidence, standing alone, cannot defeat a claimant's subjective assessment of his symptoms or the limitations they impose. *See* 20 C.F.R. §404.1529(c)(2) (An ALJ "will not reject your statements about the

intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements."). There is, thus, no substantial support in the record for the ALJ's RFC determination. As a result, the decision must be reversed and remanded.

## CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiff's motion for judgment reversing the final decision of the Commissioner of Social Security, ECF No. 1, is **GRANTED**. Pursuant to sentence four of 42 U.S.C. §405(g), the ALJ's decision is reversed, and the case is remanded to the Commissioner for further proceedings consistent with this opinion.

Dated at Milwaukee, Wisconsin on September 15, 2022.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge